UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

PHILIP A. BONADONNA
      Petitioner,


      v.                                      CIVIL ACTION NO.
                                               10-40093-JLT

J. GRONDOLSKY,
Warden,
      Respondent.

                    REPORT AND RECOMMENDATION RE:
            DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY,
                       FOR SUMMARY JUDGMENT
                         (DOCKET ENTRY # 8)

                          December 10, 2010


**BOWLER, U.S.M.J.**

   Pending before this court is a motion to dismiss or, in the alternative, for summary judgment filed by respondent J. Grondolsky ("respondent"), Warden at the Federal Medical Center in Devens, Massachusetts ("FMC Devens"). (Docket Entry # 8). Respondent seeks a dismissal of the above styled petition filed under 28 U.S.C. § 2241 ("section 2241") by petitioner Philip A. Bonadonna ("petitioner"), an inmate at FMC Devens.

   Petitioner challenges the determination by the Federal Bureau of Prisons ("BOP") that he is ineligible to participate in the Elderly Offender Home Detention Pilot Program ("the pilot program"), 42 U.S.C. § 17541(g) ("section 17541(g)"), enacted as part of the Second Chance Act of 2007, Public Law 110-99, and signed into law on April 9, 2008. Subject to certain qualifications and approval by the BOP, the pilot program allows elderly offenders to serve the remaining portion of their

sentences in home detention. 42 U.S.C. § 17541(g)(1)(A).

An inmate 65 years old or older is eligible if, in addition to other requirements, he has "served the greater of 10 years or 75 percent of the term of imprisonment to which the offender was sentenced." 42 U.S.C. § 17541(g)(5). Petitioner challenges the BOP's exclusion of good conduct time in the calculation of 75% of his "term of imprisonment" and submits the 75% calculation applies to "the sentence actually to be served" rather than the sentence imposed. (Docket Entry # 1, ¶¶ 21 & 22).

BACKGROUND

On November 26, 1984, the United States District Court for the Northern District of Georgia ("the Georgia court") issued a 40 year sentence to petitioner under a multi-count Indictment for engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848 (Count Four). The court ordered the 40 year sentence to run concurrently with two 20 year sentences under counts one and two for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) and (d). The Georgia court also sentenced petitioner to additional 15 and five year terms under other counts to run concurrently to the sentences in counts one and two.

The Georgia court additionally directed the sentences "to follow" sentences previously imposed in June 1984 by the United States District Court for the Eastern District of Arkansas ("the Arkansas court"). (Docket Entry # 10, Ex. 1). The Arkansas

court imposed a 15 year sentence and a five year sentence to run consecutively for drug offenses in violation of 21 U.S.C. §§ 846 and 963. (Docket Entry # 10, Ex. 1 & 2). The section 2241 petition attacks the execution of the 40 year sentence rendered by the Georgia court. (Docket Entry # 1, Att. 1, p. 2).

On February 1, 1992, petitioner was paroled on the 20 year sentence and began serving the 40 year sentence with a full term date of January 31, 2032. (Docket Entry # 10, Ex. 3 & 4). A BOP sentence computation designates January 21, 1984, as the earliest date petitioner committed the offense. He therefore receives the benefit of 18 U.S.C. § 4161 (repealed 1984) ("section 4161") and 18 U.S.C. § 4163 (repealed 1984) ("section 4163"), which mandate release based on good conduct time.[1] Under section 4161 and 18 U.S.C. § 4162 (repealed 1984), inmates accrue statutory good conduct time at a rate of ten days each month and may accrue industrial good time initially at a rate of three and thereafter five days a month. Subtracting statutory and industrial good conduct time credit, the BOP projects petitioner's mandatory release date as March 15, 2015. (Docket Entry # 10, Ex. 4). The projected mandatory release date is slightly more than 23 years after petitioner began serving the 40 year sentence. Having served 18 years of the 40 year sentence since February 1, 1992,

---

[1] See Padilla Palacios v. U.S., 932 F.2d 31, 32-33 (1st Cir. 1991) (explaining statutory framework); see also Perez-Olivo v. Chavez, 394 F.3d 45, 50 (1st Cir. 2005) ("18 U.S.C. § 4161 (repealed), was in effect in various forms from 1902 until 1984, at which time Congress codified the current GCT statute as part of the Comprehensive Crime Control Act").

petitioner has served more than 75% of the sentence using the projected March 15, 2015 date that includes credit for statutory good conduct time.[2]

Petitioner, who was born on December 19, 1932, has type two diabetes, peptic ulcers, prostate cancer and diverticulosis. (Docket Entry # 1, ¶ 26; Docket Entry # 10, Ex. 4). After the April 9, 2008 enactment of section 17541, the BOP considered petitioner's eligibility for the program. On May 15, 2009, members of the probation department visited the home of petitioner's wife to assess the home's suitability for home confinement. On June 16, 2009, however, the BOP deemed petitioner ineligible for participation because he did not satisfy the requirement of serving 75% of the 40 year sentence. (Docket Entry # 1, Att. 1, ¶ 14(a); Docket Entry # 12, Ex. A).

Petitioner appealed the denial of eligibility to the Warden, the Regional Director of the BOP and the General Counsel of the BOP. (Docket Entry # 1, ¶ 35). On February 1, 2010, the Administrator of National Inmate Appeals denied the final appeal because the program requires a calculation of the 75% figure based on the "'total sentence imposed' and not the 'amount of time it is anticipated [petitioner] will serve.'"[3] (Docket Entry

---

[2] Petitioner avers that he has served 18 years as of May 20, 2010, and is required to serve 23 years and eight months. (Docket Entry # 1, ¶ 28). An April 10, 2009 BOP classification form reflects time served as "76-90%." (Docket Entry # 1, Ex. B).

[3] Respondent does not seek dismissal due to lack of exhaustion of administrative remedies. In any event, mandatory exhaustion of administrative remedies does not apply to section

# 1, ¶ 36). A February 5, 2009 BOP Operations Memorandum similarly states that, "The phrase 'term of imprisonment to which the offender was sentenced' refers to the term of imprisonment imposed by the sentencing court(s), whether stated in days, months, or years." (Docket Entry # 10, Ex. 5, ¶ 3(b)(1)). Adhering to this construction results in an eligibility date of January 31, 2022 (75% x 40 years), a date that petitioner points out is almost seven years after his anticipated March 15, 2015 mandatory release.

Petitioner filed this section 2241 petition in May 2010. He asks this court for an interpretation that the language in section 17541(g)(5)(A)(ii), "75 percent of the term of imprisonment to which the offender was sentenced," means "the actual sentence served." (Docket Entry # 1, ¶ 39). Petitioner additionally submits that he is "entitled to at least a Due Process Hearing before the BOP can properly deny my request for the Pilot Program." (Docket Entry # 1, Att. 1, ¶ 16).

## DISCUSSION

Section 2241 provides the appropriate vehicle to challenge the execution of a sentence. See Monahan v. Winn, 276 F.Supp.2d at 204; Jimenez v. United States, 2000 WL 28164 at * 2 (S.D.N.Y. Jan. 14, 2000). The parties disagree about the proper meaning of the statutory language in section 17541(g) as applied to the 40

---

2241 proceedings. Monahan v. Winn, 276 F.Supp.2d 196, 204 (D.Mass. 2003); see also Blair-Bey v. Quick, 151 F.3d 1036, 1040-1041 (D.C.Cir. 1998).

year sentence imposed by the Georgia court.

Petitioner argues that Congress intended the language to include statutory good conduct time calculated at the outset of the 40 year sentence. Otherwise, he points out, no elderly inmate sentenced before the effective date of the Sentencing Reform Act of 1984, Pub.L. No. 98-473, 98 Stat. 1987,[4] would be eligible for the pilot program.[5] (Docket Entry ## 1 & 12). Under the old regime in section 4161, an inmate was "entitled to a deduction" of the statutory good conduct time "from the term of his sentence beginning with the day on which the sentence commences to run." 18 U.S.C. § 4161 (repealed 1984). Borrowing dicta from Barber, petitioner points out that inmates receive good conduct time under section 4161 "at the outset of a prisoner's sentence."[6] Barber v. Thomas, 130 S.Ct. at 2505.

---

[4] The Sentencing Reform Act of 1984, "(effective Nov. 1, 1987), . . . eliminated parole and some forms of probation in favor of a new supervised release regime." U.S. v. Hernandez-Ferrer, 599 F.3d 63, 68 (1st Cir. 2010). Petitioner references this new regime as "the new law" and the parole and mandatory good conduct time provisions, which include sections 4161 and 4163 under which he was sentenced, as "the old law." (Docket Entry ## 1 & 12).

[5] Although petitioner fails to elaborate upon the argument, section 4161 allows credit of ten days a month, subject to forfeiture if the inmate fails to observe prison rules, 18 U.S.C. § 4161 (repealed 1984); Barber v. Thomas, _U.S._, 130 S.Ct. 2399, 2505 (2010) (good conduct time deduction made at outset of sentence was then "subject to forfeiture"), which reduces a sentence by approximately one third. Absent forfeiture, elderly offenders subject to good conduct time deduction under section 4161 obtain mandatory release after serving approximately two thirds of a sentence which, barring forfeiture, occurs sooner than 75% or three fourths of the sentence imposed.

[6] The entire language quoted from the Barber decision by petitioner reads as follows:

Petitioner submits that the retrospective awards of good conduct time under the new regime differ from the prospective awards "at the outset of a prisoner's sentence"[7] under the old law. (Docket Entry # 12). Petitioner further points out that respondent's reliance on the few cases to interpret good conduct time as outside the calculation of the "term of imprisonment to which the offender was sentenced," 42 U.S.C. § 17541(g)(5), is misplaced because these cases[8] all involve sentences under the new law. Because petitioner receives a deduction of good conduct time "at the outset of [his] sentence" under the old law, his "term of imprisonment" to which he "was sentenced" necessarily includes statutory good conduct time, according to petitioner.

---

> Under the previous good time provision, a prisoner was "entitled to a deduction from the term of his sentence beginning with the day on which the sentence commences to run." 18 U.S.C. § 4161 (1982 ed.) (repealed 1984). This deduction, granted at the outset of a prisoner's sentence, was then made subject to forfeiture if the prisoner "commit[ted] any offense or violate[d] the rules of the institution." § 4165 (repealed 1984). The present statute, § 3624 (2006 ed.), in contrast, creates a system under which "credit" is "earned" "at the end of" the year based on an evaluation of behavior "during that year." We agree with the Government that "[t]he textual differences between the two statutes reveal a purpose to move from a system of prospective entitlement to a system of retrospective award."

Barber v. Thomas, 130 S.Ct. at 2504-2505 (brackets in original).

[7] Barber v. Thomas, 130 S.Ct. at 2505.

[8] Mathison v. Davis, 2010 WL 1769750 * 3 (D. Colo. May 3, 2010); Izzo v. Wiley, 2010 WL 1678171 * 2 (D. Colo. Feb. 9, 2010); Mangiardi v. Fed. Bureau of Prisons, 2009 WL 4544747 * 6 (M.D. Pa. Nov. 30, 2009). After the parties filed briefs, the Tenth Circuit affirmed the Izzo decision in the first published circuit court decision to address the issue. Izzo v. Wiley, 620 F.3d 1257 (10th Cir. 2010).

Respondent argues that a straight forward application of the statutory language of section 17541(g) leads to an interpretation that the sentence "to which the offender was sentenced" is the 40 year sentence imposed by the Georgia court. According to respondent, the plain language of section 17541(g) does not take into account good conduct time. (Docket Entry # 9).

"Statutory interpretation begins with the language of the statute." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 8 (1st Cir. 2007). Absent "either a built-in definition or some reliable indicium that the drafters" of the statute "intended a special nuance, accepted canons of construction teach that the word(s)" are given their "ordinary meaning." S.E.C. v. Tambone, 597 F.3d 436, 442-443 (1st Cir. 2010).

Here, although not pointed out by the parties, section 17541(g)(5)(C) elucidates the meaning of the phrase "term of imprisonment." The relevant provision states that, "The term 'term of imprisonment' includes multiple terms of imprisonment ordered to run consecutively or concurrently, which shall be treated as a single, aggregate term of imprisonment for purposes of this section." 42 U.S.C. § 17541(g)(5)(C). The words "consecutively" and "concurrently" connote terms ordinarily used by a sentencing court as does the word "ordered."

Turning to the exact language in the 75% calculation provision, it imposes the requirement that the inmate have "served the greater of 10 years or 75 percent of the term of imprisonment to which the offender was sentenced." 42 U.S.C. §

8

17541(g)(5)(A). It is true that section 4161 prescribes a deduction of good conduct time after the sentencing court imposes the sentence at the outset of a sentence on "the day . . . the sentence commences to run," 18 U.S.C. § 4161, whereas the new regime prescribes a deduction of good conduct time after the inmate serves a year of a sentence, 18 U.S.C. § 3624. See Barber v. Thomas, 130 S.Ct. at 2504-2505 (explaining calculations). The prospective application of good conduct time deductions under section 4161 nevertheless still takes place after the sentencing court imposes the sentence. Petitioner's temporally based argument to distinguish cases cited by respondent[9] is therefore misplaced. The relevant distinction is between the offender's sentence and the inclusion of good conduct time deductions in that previously imposed sentence. The distinction between the earlier and later deductions of good conduct time under the old and new regimes is not material. Deductions for good conduct time are also not part of the term imposed by the sentencing court because they are never served. See Mangiardi v. Federal Bureau of Prisons, 2009 WL 4544747 *6 ("GCT is not part of the term imposed by the sentencing court" because "GCT days are never served, but are deducted from an inmate's statutory release date to establish a projected GCT Release Date").

Furthermore, the language does not read "to which the offender will actually serve." It does not reference good conduct time deductions or add language to the effect "term of

---

[9] See footnote eight.

imprisonment to which the offender was sentenced 'including deduction for good conduct time.'" Rather, "term of imprisonment," defined as including terms "ordered to run consecutively or concurrently," plainly refers to a term of imprisonment ordered by a court such as a consecutive sentence or a concurrent sentence.

It is also notable that the "term of imprisonment to which the offender was sentenced," 42 U.S.C. § 17541(g)(5)(A), plainly imparts a reference to a sentence. The term "sentence," which the statute does not define, commonly means, "The judgment that a court formally pronounces after finding a criminal defendant guilty." Black's Law Dictionary (9th ed. 2009); see S.E.C. v. Tambone, 597 F.3d at 443 ("[o]ne reference point for determining the ordinary meaning of a word is its accepted dictionary definition"); U.S. v. Jimenez, 507 F.3d 13, 19 (1st Cir. 2007) (examining dictionaries to interpret plain meaning of statute's text); see, e.g., U.S. v. Jaca-Nazario, 521 F.3d 50, 56 (1st Cir. 2008) (citing Black's Law Dictionary (8th ed. 2004) to determine common meaning of "suspended sentence").

Petitioner nevertheless correctly points out that the BOP interprets the phrase "term of imprisonment" in 18 U.S.C. § 3624(b) ("section 3624(B)"), to calculate good conduct time deductions as meaning the sentence actually served. (Docket Entry # 1, ¶¶ 21-22). The Supreme Court in Barber endorsed this interpretation based on the language of section 3624(b). That language, however, differs from the "term of imprisonment"

language in section 17541. Section 3624(b) contains the additional modifiers of "54 days at the end of each year" and a determination by the BOP "during that year." 18 U.S.C. § 3624(b). Reading the "term of imprisonment" language in the context of these modifying phrases persuaded the <u>Barber</u> Court that the phrase "term of imprisonment" in section 3624(b) "refers to prison time actually served rather than the sentence imposed by the judge." <u>Barber v. Thomas</u>, 130 S.Ct. at 2506-2507; <u>see</u> <u>Izzo v. Wiley</u>, 620 F.3d at 1260-1261 (using this reasoning to distinguish the <u>Barber</u> Court's interpretation of "term of imprisonment" in section 3624 and concluding that "term of imprisonment" in section 17541 "refers to the term imposed by the sentencing court").

The few courts to address whether the calculation of "75 percent of the term of imprisonment" refers to the sentence actually served including good conduct time deductions or refers instead to the sentence actually imposed by the sentencing court adhere to the latter construction because of the statute's plain and unambiguous language. <u>See</u> <u>Izzo v. Wiley</u>, 620 F.3d at 1260 (using "plain-language analysis, we hold that the phrase 'term of imprisonment to which the offender was sentenced' unambiguously refers to the term imposed by the sentencing court, without any consideration of good time credit"); <u>Mathison v. Davis</u>, 2010 WL 1769750, *3 (D.Colo. May 3, 2010) ("phrase 'term of imprisonment to which the offender was sentenced' unambiguously refer[s] to the term of the sentence imposed by the sentencing court, and

does not include consideration of good time conduct"), aff'd, 2010 WL 3965906 (10th Cir. Oct. 12, 2010); Mangiardi v. Federal Bureau of Prisons, 2009 WL 4544747, *6 (M.D.Pa. Nov. 30, 2009) (approving BOP's decision not to include good conduct time because "phrase 'term of imprisonment to which the offender was sentenced' unambiguously refers to the term imposed by the sentencing court").

Petitioner's reliance on the rule of lenity (Docket Entry # 12) is misplaced. The rule "'only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended.'" U.S. v. Gerhard, 615 F.3d 7, 22 (1st Cir. 2010) (quoting Barber v. Thomas, 130 S.Ct. at 2508-2509, with citations and internal quotation marks omitted). The phrase "term of imprisonment to which the offender was sentenced" does not present an ambiguity let alone a grievous one.

Although the BOP Operations Memorandum reaches the same result, it does not warrant deference under Chevron USA, Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), because it is similar to an agency's policy statement, opinion letter or enforcement guideline "all of which lack the force of law." Christensen v. Harris County, 529 U.S. 576, 587 (2000); see Izzo v. Wiley, 620 F.3d at 1259 (describing the BOP Operations Memorandum as an "informal agency" interpretation of a statute); Calvao v. Town of Framingham, 599 F.3d 10, 18 (1st Cir. 2010)

("'[i]nterpretations such as those in opinion letters do not warrant Chevron-style deference'") (quoting Christensen v. Harris County, 529 U.S. at 587, with ellipses omitted). The BOP Operations Memorandum provides guidance for staff to administer the pilot program created by section 17541(g). There is no indication that the memorandum underwent a formal rulemaking or adjudicative process. See Christensen v. Harris County, 529 U.S. at 587 (noting "we confront an interpretation contained in an opinion letter, not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking"). Consequently, the Operations Memorandum is "'"entitled to respect only to the extent that [its] interpretations have the 'power to persuade.'"'" Calvao v. Town of Framingham, 599 F.3d at 18 (quoting Christensen v. Harris County, 529 U.S. at 587, quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)) (ellipses omitted); Doe v. Leavitt, 552 F.3d 75, 79-80 (1st Cir. 2009) (if "informal agency interpretation is deemed not to warrant Chevron deference, it may nonetheless lay claim to a lesser degree of deference under the Skidmore banner"). That said, even if section 17541 is ambiguous, affording deference to the agency's interpretation, however slight, under Skidmore's sliding-scale approach (Docket Entry # 10, Ex. 5, ¶ 3(b)(1)) will still yield the same result. See Doe v. Leavitt, 552 F.3d at 81 ("Skidmore standard entails is a sliding-scale approach under which the degree of deference accorded to an agency interpretation hinges on a variety of factors").

There is also no due process violation.  Petitioner received process in the form of a tri-level review of the decision by FMC Devens staff to reject his eligibility because he had not served 75% of the sentence imposed by the Georgia court.  The Warden, the Regional Director of the BOP and the General Counsel of the BOP reviewed the decision and denied the appeals.  (Docket Entry # 1, ¶¶ 35-36).  Consequently, the failure to hold a hearing does not contravene due process.  Furthermore, the historical and statutory notes to the amendments made by Public Law 110-199 contain a rule of construction that unerringly states, "Amendments made by Pub.L. 110-199, April 9, 2008, 122 Stat. 657, shall not be construed as creating a right or entitlement to assistance or services for any individual, program or grant recipient."  42 U.S.C. § 17541 (historical and statutory notes).

Petitioner's remaining arguments are not persuasive.  The statutory phrase is unambiguous.  Petitioner is not entitled to the relief he seeks including directing respondent to reconsider petitioner for the pilot program.  It is also not necessary to address respondent's additional alternative arguments including the unavailability of the program's expiration on September 30, 2010.

## CONCLUSION

In accordance with the foregoing discussion, this court

**RECOMMENDS**[10] that the motion (Docket Entry # 8) be **ALLOWED** and the section 2241 petition is **DISMISSED**.

                                          /s/ Marianne B. Bowler
                                          **MARIANNE B. BOWLER**
                                          United States Magistrate Judge

---

[10] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.